COHEN, C.J.
Sara Buschor ("Former Wife") appeals a Final Judgment of Modification entered in favor of Joseph Buschor ("Former Husband"), which changed the primary residence of the parties' minor child to that of Former Husband by awarding Former Husband seventy percent timesharing and denied Former Wife's petition for relocation. Former Wife argues that the timesharing modification and change in the child's primary residence violates her due process rights because Former Husband did not seek that relief in his pleadings below. Former Wife also contends that the trial court abused its discretion in denying her petition for relocation. We agree on both points and reverse.
The record confirms that Former Wife did not have notice that the trial court might change the child's primary residence or award any more than equal timesharing to Former Husband, which is the amount he requested in his petitions for modification. This lack of notice and the trial court's ruling constituted relief outside of that requested in Former Husband's pleadings in violation of Former *835 Wife's due process rights. See, e.g., Maras v. Still, 927 So.2d 192 (Fla. 2d DCA 2006) (finding that former wife's due process rights were violated when trial court awarded relief not requested in former husband's pleading and former wife was without notice of the possible outcome).
As to the trial court's denial of Former Wife's petition for relocation, we find that the trial court did not properly consider the best interest factors set forth in section 61.13, Florida Statutes (2015), or the factors regarding relocation set forth in section 61.13001, Florida Statutes (2015). With respect to the findings the trial court did make, the record reveals those findings to be unsupported by competent, substantial evidence. The undisputed evidence presented should have resulted in the granting of Former Wife's petition for relocation.
Section 61.13001(7) expressly states that no "presumption in favor of or against a request to relocate with the child" arises simply because a "move will materially affect the current schedule of contact, access, and timesharing with the nonrelocating parent." See § 61.13001(7), Fla. Stat. Instead, when considering whether to allow a requested relocation, the court must consider all of the following factors:
(a) The nature, quality, extent of involvement, and duration of the child's relationship with the parent or other person proposing to relocate with the child and with the nonrelocating parent, other persons, siblings, half-siblings, and other significant persons in the child's life.
(b) The age and developmental stage of the child, the needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
(c) The feasibility of preserving the relationship between the nonrelocating parent or other person and the child through substitute arrangements that take into consideration the logistics of contact, access, and time-sharing, as well as the financial circumstances of the parties; whether those factors are sufficient to foster a continuing meaningful relationship between the child and the nonrelocating parent or other person; and the likelihood of compliance with the substitute arrangements by the relocating parent or other person once he or she is out of the jurisdiction of the court.
(d) The child's preference, taking into consideration the age and maturity of the child.
(e) Whether the relocation will enhance the general quality of life for both the parent or other person seeking the relocation and the child, including, but not limited to, financial or emotional benefits or educational opportunities.
(f) The reasons each parent or other person is seeking or opposing the relocation.
(g) The current employment and economic circumstances of each parent or other person and whether the proposed relocation is necessary to improve the economic circumstances of the parent or other person seeking relocation of the child.
(h) That the relocation is sought in good faith and the extent to which the objecting parent has fulfilled his or her financial obligations to the parent or other person seeking relocation, including child support, *836 spousal support, and marital property and marital debt obligations.
(i) The career and other opportunities available to the objecting parent or other person if the relocation occurs.
(j) A history of substance abuse or domestic violence as defined in s. 741.28 or which meets the criteria of s. 39.806(1)(d) by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
(k) Any other factor affecting the best interest of the child or as set forth in s. 61.13.
Id. § 61.13001(7)(a)-(k). Section 61.13 provides twenty factors regarding the best interest of the child for the court to consider when modifying a timesharing agreement. Id. § 61.13(3)(a)-(t). As the parent seeking relocation, Former Wife has the burden of proving by a preponderance of the evidence that relocation is in the best interest of the child. Id. § 61.13001(8). If this initial burden is met, the burden then shifts to the nonrelocating parent, Former Husband here, to show by a preponderance of the evidence that relocation is not in the best interest of the child. Id. Granting or denying relocation based on findings that are not supported by competent, substantial evidence constitutes reversible error. E.g., Berrebbi v. Clarke, 870 So.2d 172, 173 (Fla. 2d DCA 2004).
The parties divorced prior to the birth of their child, and the parties' marital settlement agreement provided that the unborn child "shall reside primarily with the Mother." The agreement further provided that "the Father shall have liberal and frequent contact and access with the child as agreed upon by the parties, and each of the parties shall exercise the utmost of good faith and consent to all reasonable requests of the other party in connection therewith." The agreement outlined specific graduated timesharing based on the child's age.
Despite having only seen the child a handful of times over the first three months of the child's life, Former Husband filed his first supplemental petition to modify parental responsibility, visitation, or parenting plan/timesharing schedule when the child was just over three months old, requesting to alter the recently agreed-upon arrangement. That supplemental petition was resolved at mediation, and the mediated settlement agreement modified the parties' original timesharing arrangement by increasing Former Husband's routine timesharing as follows:
The Father shall be entitled to timesharing every other weekend from Saturday at 9:00 A.M. until Sunday at 6:00 P.M..... It is also agreed that the Father shall be entitled to have timesharing with the minor child each week on Tuesday from after work and in no event later than 6:00 P.M. by picking up the minor child from either the Mother or the child's child care provider and this timesharing continuing until the following morning, at which time the Father shall ensure that the minor child is either dropped to the Mother's home or to the minor child's child care provider by 9:00 A.M.
The mediated settlement agreement also provided that the parties "shall be entitled to agree on additional timesharing so long as they mutually agree."[1]
One year after the modification order was entered, Former Husband filed a second supplemental petition for modification, *837 requesting that the trial court modify his visitation "to provide [him] with 50% of the contact, visitation and parenting of the minor child...." In the petition, Former Husband alleged that Former Wife had engaged in alienation of affection, had him falsely arrested shortly after the modification, filed a frivolous injunction solely for the purpose of keeping Former Husband away from the child, caused Former Husband to come under investigation by the FDLE, failed to keep Former Husband apprised of information regarding the health and welfare of the child, falsely accused his wife of biting the parties' child, and caused her employer (the church daycare) to deny Former Husband the ability to visit the child at the daycare and to go online to view the child at the daycare in real time.[2]
While Former Husband's petition was pending, Former Wife's current husband learned that his employment as a master technician in a specialized field would be coming to an abrupt end. He was given the option to continue working his same job in South Florida or Alabama. He searched for local jobs in the same industry that would offer the same benefits and similar pay so that he could continue to support his family without relocating, but found none. Given that the current husband was the primary provider for his family and that he could not find comparable employment locally that would provide insurance benefits, he felt compelled to accept the employment offer and move to South Florida out of necessity.[3]
Consequently, Former Wife filed a motion for relocation, requesting to relocate with the child to South Florida due to financial necessity arising from her current husband's change of employment. Former Wife noticed her motion for relocation for a hearing prior to moving, and Former Husband responded by filing a motion asking the court, in part, to strike Former Wife's relocation request as improper under section 61.13001(3), Florida Statutes.
The trial court held a hearing on Former Husband's motion to strike but canceled the hearing on Former Wife's motion to relocate, instructing the parties to attempt to resolve their timesharing and parenting disputes among themselves. The next day, Former Wife filed a supplemental petition for modification of final judgment for relocation, and without obtaining a court order, moved with the parties' child to South Florida. Former Husband immediately filed a motion for contempt and return of the child, but the parties subsequently entered into a joint stipulation *838 on temporary timesharing addressing the relocation. The temporary agreement provided the parties equal timesharing with the child on an alternating weekly basis for six months or until further order of the court, whichever occurred first. The parties agreed to exchange the child at a location equidistant from each party's home. When the temporary agreement expired, Former Wife offered to continue the same arrangement, but Former Husband refused to meet Former Wife at the previously agreed-upon location, instead demanding that Former Wife transport the child to and from his home.[4]
Much of the trial court's rationale for denying relocation and granting Former Husband's petition for modification stems from problems the parties had with communication and visitation, which led the court to believe that Former Wife would not cooperate in allowing Former Husband liberal and frequent visitation with the child. As every judge who has presided over domestic cases knows, liberal and frequent visitation is virtually always defined. There is a good reason for that. Not to do so is to ensure that the parties will be back before the court on a regular basis.
Here, the parties voluntarily entered into a timesharing agreement modifying their initial agreement. While the modification allowed Former Husband additional visitation, the agreement defined specific visitation and allowed additional timesharing so long as the parties mutually agreed. Notwithstanding, the trial court effectively punished Former Wife for not yielding to what the evidence revealed was Former Husband's ever-increasing demands for more timesharing. Stated differently, the evidence does not support the trial court's finding that Former Wife did not go out of her way to allow more timesharing than set forth in the parties' agreement. Indeed, the collection of e-mails and text messages entered into evidence were consistent with Former Wife's testimony that she routinely allowed additional timesharing despite the fact that Former Husband was demanding and never satisfied with the extra visitation. Further, the evidence was undisputed that Former Husband repeatedly sought more and more accommodations to his requests for additional time with the child, and when Former Wife made efforts to accommodate those requests, Former Husband would violate the terms of even those agreements.
The incident that led to Former Husband's arrest for domestic battery and burglary of an occupied dwelling serves as an example of Former Husband's aggressive behavior. Pursuant to the parties' agreement, Former Husband was scheduled to have the child after work on Tuesday evenings. Because Former Husband was not working that day, he asked Former Wife to allow his visitation to begin earlier. Former Wife accommodated that request, agreeing to an earlier pickup time. Instead of arriving at the agreed-upon time, Former Husband appeared at Former Wife's home even earlier and insisted on taking the child, who was still asleep. Uninvited, he forcefully entered Former Wife's home and took the child from his room.
Former Husband also routinely removed the child from daycare without prior notice to Former Wife. Even following his arrest, Former Husband conducted pre-dawn surveillance on Former Wife's home. He would demand additional timesharing via *839 text message, and when Former Wife did not quickly respond, would construe her delay as consent.
It is also undisputed that Former Husband would physically withhold the child from Former Wife and would insist on discussing their disputes in the presence of the child, despite Former Wife's request to desist. When asked if those "discussions" would often last thirty minutes, Former Husband, as was his penchant, was unresponsive, stating, "I wouldn't put a time frame on it." Former Husband refused to participate in a program called "Talking Parents" that would have kept a record of the parties' communications.
On one occasion, Former Husband was so disruptive at the child's daycare that other children in the class became upset and began crying. When the daycare administration responded and asked Former Husband to continue the conversation outside the presence of the young children, he refused. The daycare administration characterized Former Husband as combative, which is consistent with Former Wife's description of Former Husband's behavior.
The evidence reflected that Former Husband would ask for visitation almost every day and then complain that Former Wife would not agree to his "reasonable requests." Former Wife's obligation was to follow the timesharing schedule agreed to by the parties and adopted by order of the court. The evidence is undisputed that Former Wife did so and more, agreeing to many of Former Husband's various requests for additional timesharing. Accordingly, the basis for the trial court's decision to deny Former Wife's petition for relocation, that Former Wife would not cooperate in allowing liberal and frequent visitation, is not supported by competent, substantial evidence.
Moreover, applying the relocation criteria set forth in section 61.13001(7) and the best interest factors set forth in section 61.13(3) to the undisputed facts clearly reveals that Former Wife met her burden of proving by a preponderance of the evidence that relocation is in the best interest of the child. For example, as to section 61.13001(7)(a) and section 61.13(3)(d), it is undisputed that Former Wife had been the primary caregiver for the child since his birth, and there was no evidence that the child was not thriving in her care. Further, as detailed above, Former Wife has demonstrated that she has facilitated and encouraged a close and continuing relationship between Former Husband and the child, that she has honored the timesharing schedule agreed to by the parties and adopted by the court, and that she is more than reasonable when changes are requested, often accommodating requests for more visitation despite Former Husband's hostile attitude toward her. § 61.13(a), (c), Fla. Stat. (2015).
In addition, under section 61.13001(7)(f)-(h), the trial court recognized that relocation was a financial necessity for Former Wife and her family and that they otherwise would not be able to maintain health insurance for their blended family, including the child who is the subject of the parties' litigation. Further, if allowed to relocate, the child would attend one of the top schools in South Florida where Former Wife works as a teaching assistant. Id. § 61.13001(7)(b), (e). Moreover, Former Wife undisputedly testified that as a result of the relocation, the parties' confrontational communications have diminished, and the child's exposure to Former Husband's routine displays of hostility toward her prior to her relocation have been eliminated, providing the child a more stable environment. Regarding section 61.13001(7)(c), the record confirms that both parties are capable of timesharing despite the distance between them and *840 that both parties are capable of, and had been successfully complying with, substitute timesharing arrangements between the time of Former Wife's relocation and the trial, a six-month period of equal timesharing that the parties facilitated without incident. In sum, Former Wife met her burden of proving by a preponderance of the evidence that relocation is in the best interest of the child. Id. § 61.13001(7)(a), (b), (c), (e), (f), (g), (h), (k).
Because Former Wife met her burden of proof, the burden then shifted to Former Husband to show by a preponderance of the evidence that relocation is not in the best interest of the child. Id. § 61.13001(8). Former Husband failed to meet his burden. While he complains that Former Wife did not agree to his "reasonable requests," suggesting that she would not foster a continuing meaningful relationship between the child and him if permitted to relocate, it bears repeating that the undisputed evidence was that Former Wife complied with the timesharing to which the parties agreed, and she allowed additional timesharing even when Former Husband demanded, instead of requested, that time. The collection of e-mails and text messages exchanged between the parties reflected as much. And while Former Wife's relocation without consent or a court order was improper (a factor the trial court should and did consider), that alone is insufficient to support the denial of relocation. See, e.g., Landingham v. Landingham, 685 So.2d 946 (Fla. 1st DCA 1996) (finding that former wife demonstrated substantial change in circumstances and that move would be in best interest of child even where former wife violated injunction by moving outside state with child).
Ultimately, the record reflects that competent, substantial evidence did not support the trial court's denial of Former Wife's petition for relocation. Rather, the trial court should have granted the request because Former Wife clearly established that the relocation served the child's best interest, and Former Husband failed to carry his burden of proving that relocation was not in the child's best interest. See, e.g., Orta v. Suarez, 66 So.3d 988, 989-1002 (Fla. 3d DCA 2011) (finding that former wife was entitled to relocate with parties' child where former wife met burden of demonstrating that relocation was in best interest of child and former husband failed to demonstrate why proposed relocation was not in child's best interest). Therefore, we reverse the final judgment changing the child's primary residence to that of Former Husband and denying Former Wife's petition for relocation. We remand with directions for the trial court to grant Former Wife's relocation request and to formulate a timesharing agreement consistent with this opinion.
REVERSED and REMANDED.
MUNYON, L., Associate Judge, concurs.
EISNAUGLE, J., concurs in part and dissents in part, with opinion.

Shortly after that modification order was entered, Former Wife married her current husband. Former Husband also married his current wife.

Notably, all of the allegations made in Former Husband's petition were baseless. For example, there is no evidence in the record that Former Wife had alienated the child's affections for Former Husband. Likewise, while Former Husband blames his departure from the Mount Dora Police Department on Former Wife, he produced no evidence or documentation to support that claim. Of further interest is Former Husband's acknowledgment that his current wife "possibly" had bitten the child. Also, there was no evidence presented that Former Wife took any action to prevent Former Husband from accessing the daycare's online system or that he had been prevented from visiting the child at the daycare. As for the circumstances of his "false arrest," the same will be addressed later herein.

Significantly, the parties' child is covered under the current husband's health insurance even though the final judgment required Former Husband to maintain health insurance for the child. Former Husband failed to do so, instead enrolling the child in what he characterized as Medicaid. As a result, the current husband covered the child through his insurance plan. The current husband also provides the insurance for his two older children from a previous marriage, as well as the newborn child he and Former Wife recently had together.

Former Wife testified that the daily hostility Former Husband subjected her to decreased since her relocation. Former Wife also found employment as a teaching assistant at one of the top schools in Florida, which would allow the child to attend school at a discounted price.