NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STEVEN BROOKS,                    )
                                  )
          Appellant,              )
                                  )
v.                                )        Case No. 2D14-908
                                  )
KIMBERLEE BROOKS,                 )
                                  )
          Appellee.               )
_____   )

Opinion filed May 15, 2015.

Appeal from the Circuit Court for Sarasota
County; Debra Johnes Riva, Judge.

Melody Ridgley Fortunato of Fortunato &
Associates, P.A., Fort Lauderdale, for
Appellant.

Kimberlee Brooks, pro se.


VILLANTI, Chief Judge.

          Steven Brooks (the Father) appeals the trial court's order denying his

motion for contempt and ordering him to file a petition to relocate.  Because the trial

court did not abuse its discretion in either instance, we affirm and write to explain why.

          The Father and the Mother had three children when their dissolution was

finalized in 2011.  As part of their time-sharing plan, the Mother and Father had shared

parental responsibility over the children.  The children were living with the Mother during the week and with the Father only every other weekend.  The plan also required that if either party were to travel out of state with the children, he or she must so inform the other party thirty days beforehand and provide a travel itinerary.  After the dissolution, the Father moved from Sarasota to Hallandale Beach.  The Mother subsequently took two out-of-state trips with the children but failed to provide the Father with notice of one of the trips or detailed itineraries.  As a result, the Father moved to hold the Mother in contempt, and the Mother moved to hold the Father in contempt for having moved to Hallandale Beach without first filing a petition to relocate pursuant to section 61.13001, Florida Statutes (2011).  After the hearing on the motions, the trial court denied both contempt motions but ordered the Father to file a petition to relocate.

In this appeal, the Father first argues that it was improper for the court to deny his motion for contempt after he uncontrovertibly established that the Mother violated the time-sharing plan.  This court reviews orders on contempt motions for an abuse of discretion.  Rojo v. Rojo, 84 So. 3d 1259, 1261 (Fla. 3d DCA 2012).

Under Florida law, "[t]here is nothing that requires a trial court to hold a person in contempt" for violating a time-sharing plan, and a trial court does not abuse its discretion simply by declining to do so.  Milton v. Milton, 113 So. 3d 1040, 1040 (Fla. 1st DCA 2013).  As was its prerogative, the trial court opted to not hold the Mother in contempt, not for lack of a factual basis, but as a means of discouraging further vindictive and vexatious litigation between the parties.  Because the parties had already demonstrated a proclivity to engage in such untoward tactics, this decision was not arbitrary and thus did not constitute an abuse of discretion.  See Canakaris v.

Canakaris, 382 So. 2d 1197, 1203 (Fla. 1980). And, as noted, even without a valid reason to deny a contempt motion, there is no authority mandating that a trial court hold a party in contempt even based upon the movant's factually correct motion. Milton, 113 So. 3d at 1040. Accordingly, we affirm on this issue in this instance and remind the parties that the trial court can exercise its contempt powers if and when it deems it necessary to address any future violations of the parties' time-sharing agreement.

Next, the Father argues that the trial court erred in ordering him to file a petition to relocate pursuant to section 61.13001 when he moved from Sarasota to Hallandale Beach because he is not the "primary residential parent" of the children. Because this is an issue of statutory interpretation, this court reviews the trial court's decision de novo. B.Y. v. Dep't of Children & Families, 887 So. 2d 1253, 1255 (Fla. 2004).

When Chapter 61 was overhauled in 2008, the legislature shied away from certain terms, in particular the terms "primary residential parent" and "nonresidential parent." The emphasis shifted from such terminology to "time-sharing parent"; for example, section 61.13001(3) holds that "a parent or other person seeking relocation must file a petition to relocate and serve it upon the other parent, and every other person entitled to access to or time-sharing with the child." Further, "relocation" is defined by section 61.13001(1)(e) as "a change in the location of the principal residence of a parent or other person from his or her principal place of residence at the time of the last order establishing or modifying time-sharing, or at the time of filing the pending action to establish or modify time-sharing." Because the definition excludes any

reference to the relocating parent being the primary residential parent, the trial court ruled that the Father was required to file a petition to relocate before moving.

Even though the title of section 61.13001 should be considered along with the statutory text, see State v. Webb, 398 So. 2d 820, 825 (Fla. 1981) ("The title is more than an index to what the section is about or has reference to; it is a direct statement by the legislature of its intent."), that title—"Parental relocation with a child"—must be read in conjunction with and does not override the text of the statute, see Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 47 (2008) ("To be sure, a subchapter heading cannot substitute for the operative text of the statute. Nonetheless, statutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute." (internal citations and quotations omitted)); see also Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co., 331 U.S. 519, 528-29 (1947) (holding that "the title of a statute and the heading of a section cannot limit the plain meaning of the text"). And the text in multiple instances indicates that even a noncustodial parent with visitation rights would have to file a petition to relocate. See § 61.13001(1)(d) (defining "parent" as "any person . . . who is entitled to access to or time-sharing with the child"); § 61.13001(1)(e) (defining "relocation" as "a change in the location of the principal residence of a parent . . . from his or her principal place of residence"); see also § 61.13001(3) ("[A] parent or other person seeking relocation must file a petition to relocate and serve it upon the other parent . . . ."); § 61.13001(2)(a) ("If the parents and every other person entitled to access to or time-sharing with the child agree to the relocation of the child, they may satisfy the requirements of this section by signing a written agreement . . . ." (emphasis added)). Thus, contrary to the Father's argument, it

is clear to us that the legislature has changed the focus from "primary residential parent" to time-sharing parent, and the potential for a residential change of a primary residential parent is no longer the exclusive sine qua non for the current statutory requirement to file a relocation petition. Furthermore, the statute contemplates that the parties will either agree on the petition or contest it in good faith, taking into account any applicable presumption and a myriad of factors from transportation and other costs to "a detailed statement of the specific reasons for the relocation," so that ultimately a decision in the best interests of the minor child may be made. For these reasons, we respectfully disagree with our sister court's interpretation set forth in Raulerson v. Wright, 60 So. 3d 487, 489 (Fla. 1st DCA 2011) (evaluating the legislative intent of section 61.13001 and determining that the section was intended to only "delineate[] the requirements a primary residential parent must follow before relocating with a minor child who is the subject of an order determining the child's time-sharing, residential care, kinship, or custody" (emphasis added)). Based on our contextual analysis, we are compelled to give effect to the clear legislative intent behind section 61.13001. See Bautista v. State, 863 So. 2d 1180, 1185 (Fla. 2003). Hence, the Father, even as a noncustodial parent, was required to seek court permission before changing his residence, and it was not an abuse of discretion to compel him to do so after the fact. For this reason, we certify conflict with Raulerson and affirm the court's order directing the Father to file a petition to relocate.

We also affirm the trial court's decision not to hold the Father in contempt for failing to first follow the statute before relocating for the same reasons we upheld the court's denial of the Mother's contempt petition. See also § 61.13001(3)(e) ("Relocating

the child without complying with the requirements of this subsection subjects the party in violation to contempt . . . ." (emphasis added)). Because the Father's move did not change the child's residence, he should not have been held in contempt on this basis as well. However, if he fails to follow the court's order to file a petition to relocate, then a future contempt proceeding cannot be ruled out.

Affirmed.

NORTHCUTT and BLACK, JJ., Concur.