LAMBERT, J.
Adam Hull ("Former Husband") appeals the supplemental final judgment denying his petition to relocate to Oregon with his three minor children that he shares with his ex-wife, Autumn Sexton Hull ("Former Wife").[1] We affirm.
The parties' marriage was dissolved in June 2014. The final judgment incorporated a mediated settlement agreement executed by the parties, which included a parenting plan outlining their parental responsibilities and time-sharing with the children.
In February 2017, Former Husband was residing in Volusia County when he filed the instant petition under section 61.13001, Florida Statutes (2017), to allow him and the children to relocate to a forty-acre farm in Eugene, Oregon, beginning in April 2017. At the time, the children were residing with Former Wife in Palm Coast, Florida, and Former Husband's time-sharing included a midweek dinner every week, alternate weekends, two seven-day blocks of time during the children's summer vacation, and evenly-split holidays. Former Husband alleged that it would be in the best interest of the children to relocate with him to Oregon because it would provide the children "with a stable household, safe community, increased household income, superior schooling, [and] a wholesome and more natural lifestyle." He also requested in his petition that the current time-sharing plan be modified so that Former Wife's time-sharing would now "follow the Volusia County Long Distance Parenting Plan."[2] Former Wife timely filed an objection to the proposed relocation. See § 61.13001(5), Fla. Stat. (2017).
The trial court's task in a relocation proceeding is to decide whether the requested relocation is in the best interest of the children. Chalmers v. Chalmers , 259 So.3d 878, 879 (Fla. 4th DCA 2018) (citing Rossman v. Profera , 67 So.3d 363, 365 (Fla. 4th DCA 2011) ). The court begins with no presumption in favor of or against a parent's request to relocate with the child, even when the move would materially affect the current schedule of contact, access, and time-sharing with the nonrelocating parent. See § 61.13001(7), Fla. Stat. (2017). In determining the best interest of the children, the court must consider and evaluate eleven separate factors set forth in section 61.13001(7)(a)-(k), with the last factor being described as "[a]ny other factor affecting the best interest of the child or as set forth in [section] 61.13," which *1137 itself separately lists twenty factors regarding the best interest of a child. See § 61.13(3)(a)-(t), Fla. Stat. (2017) ; Buschor v. Buschor , 252 So.3d 833, 835 (Fla. 5th DCA 2018).
A three-day trial on the parties' respective petitions was held in February 2018. By the time of trial, Former Husband had already voluntarily relocated to Oregon without the children. Both parties were given a full and fair opportunity at trial to present their evidence, and they both submitted written closing arguments to the court post-trial. In its detailed supplemental final judgment, the trial court addressed each factor under section 61.13001, as well as the twenty factors described in section 61.13, and specifically found that after weighing all of the factors in section 61.13001, it was not in the children's best interest for Former Husband and the children to relocate to Oregon. Although it acknowledged in its final judgment that Former Husband intended to remain in Oregon, regardless of the outcome of the case, the court declined to modify Former Husband's present time-sharing schedule because he had not separately filed a supplemental petition to modify time-sharing under section 61.13.
Former Husband's primary argument in this appeal is that the trial court erred as a matter of law in determining that absent his filing a petition or a count to modify timesharing under section 61.13, it lacked the authority under section 61.13001 to adjust his time-sharing schedule "to make it geographically viable" to accommodate his relocation to Oregon. Our review of a trial court's interpretation and application of the relocation statute is de novo. Brooks v. Brooks , 164 So.3d 162, 163-64 (Fla. 2d DCA 2015) (citing B.Y. v. Dep't of Child. & Fams. , 887 So.2d 1253, 1255 (Fla. 2004) ). We, however, see the dispositive question to be whether a parent who was unsuccessful in showing under section 61.13001 that his relocation is in the best interests of the minor children is nevertheless entitled to a modification of a previously agreed upon time-sharing schedule when the parent has voluntarily relocated without court permission. We look to the plain language of this statute for our answer.
Unlike earlier versions of the statute that focused on the relocation of the principal residence of the child,[3] the term "relocation" under section 61.13001 is now defined to mean a change in the location of the principal residence of a parent to a new location at least fifty miles away from his or her principal place of residence at the time of the last order establishing *1138 time-sharing. § 61.13001(1)(e), Fla. Stat. (2017). "Parent" means any person so named in a court order or express written agreement or who is reflected as a parent on a birth certificate and who is entitled to access to or time-sharing with the child. § 61.13001(1)(d), Fla. Stat. (2017). Thus, based upon this present statutory language, and, as explained by our sister court, a parent without the majority of the time-sharing with the child must still petition the court for permission to relocate his or her residence when the proposed relocation will be fifty or more miles away, Brooks , 164 So.3d at 164-65, with the court to decide whether the relocation of the parent is in the best interest of the child.[4]
Pertinent here, section 61.13001 provides that, if relocation is approved , the trial court has the authority and discretion to order or modify time-sharing, contact, access, telephone, internet, webcam, and other arrangements sufficient to ensure that the child has frequent, continuing, and meaningful contact with the nonrelocating parent, if financially affordable and in the best interest of the child. § 61.13001(9), Fla. Stat. (2017). Former Husband, in fact, requested that the court modify time-sharing for Former Wife, if his petition was granted. This statute, however, makes no provision for the trial court to modify time-sharing when the parent's relocation is not approved because it was not in the children's best interest, as happened here.
It is not the function of this court to rewrite section 61.13001 to provide that a parent who is denied relocation because the trial court finds that it is not in the children's best interest but who voluntarily relocates anyway is still entitled under the statute to have the trial court change the previously agreed upon time-sharing between the parents and their children.[5] The purpose of the relocation statute requiring the trial court to determine whether the parent's relocation is in the child or children's best interest becomes irrelevant if the court must nevertheless modify time-sharing when the petition is denied but the parent relocates anyway. While the trial court pragmatically believed that a long distance parenting plan between the parties would need to be adopted, it correctly recognized in its final judgment that, because it denied Former Husband's petition *1139 to relocate, there was no mechanism under section 61.13001 to allow it to grant such relief. Having chosen to relocate prior to trial and without court permission, Former Husband essentially did so at his own peril as to its effect on his ability to easily exercise his agreed-upon time-sharing with the children. See Brooks , 164 So.3d at 165 (holding that based on the clear legislative intent behind section 61.13001, "the [f]ather, even as a noncustodial parent, was required to seek court permission before changing his residence").
Former Husband raises two other arguments. We reject his second argument that there is no competent substantial evidence to support the court's decision. The court analyzed the trial evidence against each of the statutory criteria listed in section 61.13001(7) and found that, among other things, the children were "thriving" in their present environment. A trial court's decision on relocation will be affirmed if the statutory findings are supported by competent substantial evidence, which they were here. Chalmers , 259 So.3d at 879 (citing Eckert v. Eckert , 107 So.3d 1235, 1237 (Fla. 4th DCA 2013) ). We conclude that the trial court did not abuse its discretion in denying Former Husband's petition. See Milton v. Milton , 113 So.3d 1040, 1041 (Fla. 1st DCA 2013) (recognizing that an appellate court reviews a relocation determination by the trial court for abuse of discretion).
Former Husband's remaining argument that the trial court erred in failing to consider Florida's "public policy" that "each minor child have frequent and continuing contact with both parents"[6] or his constitutional right to travel is also without merit. Former Husband never challenged the constitutionality of section 61.13001 below, see Fla. Fam. Law R. Proc. 12.071 (requiring that a party challenging the constitutionality of a state statute must file a notice stating the constitutional question and serve the notice and the pleading or motion on the Attorney General or the state attorney of the judicial circuit in which the action is pending), nor did he argue to the trial court that it must consider his constitutional right to travel when determining his petition, thus waiving this argument. Lastly, Former Husband's "public policy" argument cannot be utilized to countermand the statutory requirements that a parent must show to support relocation under the plain language of section 61.13001. Former Husband's present inability to exercise his previously agreed upon time-sharing with his children is the result of the choice he made to relocate to Oregon, prior to the determination of his petition to do so.
The supplemental final judgment denying relocation is AFFIRMED.
COHEN and EISNAUGLE, JJ., concur.
APPENDIX
*1140 (Long Distance Contact Schedule More than 3 hours)
The parent who lives more than 50 miles and has more than a 3 hour commute to the local parent's residence, shall have the option to have the child(ren) every 3 day weekend during the school year. Said timesharing shall commence as early as practicable on the day before the holiday or Friday, whichever comes first, and shall conclude at 5:00 p.m. on Sunday or the day before school resumes, whichever is later. Additionally, the long distant parent may exercise a second weekend per month in the vicinity of the residence where the child(ren) are the majority of the time. In the event the parties are unable to agree which weekend, the first full weekend of the month shall be the weekend designated for timesharing. Said timesharing shall commence as early as practicable on the day school lets out or Friday, whichever comes first, and concludes at 5:00 p.m. Sunday or the day before school resumes, whichever is later.
The parent beginning his or her timesharing shall be responsible for picking up the child(ren) at the beginning of the timesharing period.
Parent/Child(ren) Contact - The child(ren) shall be permitted to have phone, e-mail, Skype, or Facetime communications with the other parent at least three times per week. If the parties are unable to agree, the child(ren) shall speak with the other parent on Mondays, Wednesdays, and Fridays at 7:30 p.m. EST. Neither parent shall monitor, intercept, interrupt, or listen to communications between the child(ren) and the other parent absent a Court order authorizing them to do so.
See Holiday Contact Schedule (Long Distance) which addresses holidays and summer.
*1141 (Holiday Contact Schedule - Long Distance)
Holiday Timesharing Supersedes the Long Distance Schedules.
Spring Break: The long distant parent shall have the child(ren) every year from immediately after school or daycare the day school recesses for the holiday until the day before school resumes.
Mother's Day Weekend: The Mother shall have the child(ren) for Mother's Day weekend each year from after school or daycare Friday until the day before school resumes. If Mother's Day falls on the Mother's regularly scheduled timesharing, then this paragraph does not apply.
Father's Day Weekend: The Father shall have the child(ren) for Father's Day weekend each year from after school or daycare Friday through the following Monday morning. If Father's Day falls on the Father's regularly scheduled summer timesharing, then this paragraph does not apply.
Thanksgiving Break: Parent one shall have the Thanksgiving Break in odd numbered years from immediately after school or daycare the day school recesses for the holiday until the day before school resumes. Parent two shall have the Thanksgiving Break in even numbered years from immediately after school or daycare the day school recesses for the holiday until the day before school resumes.
Christmas/Winter Break: Parent one shall have the week of the child(ren)'s two week winter break that includes Christmas in even number years and parent two shall have the week that includes New Years Day in even number years. Parent two shall have the week of the child(ren)'s two week winter break that includes Christmas in odd number years and parent one shall have the week that includes New Years Day in odd number years.
Check one of the following summer options:
[]Summer: The parties shall equally share the summer. If the parties are unable to agree as to how to share the summer, the long distant parent shall have the child(ren) the first half of the summer and the local parent shall have the child(ren) the second half of the summer.
[]Summer: The long distant parent shall have the entire summer except for a two week time period. Should the parties be unable to agree upon the two week time period, then the local parent shall have the child(ren) the last two weeks before school resumes.

Former Wife also petitioned to modify the final judgment of dissolution of marriage to be awarded sole parental responsibility over the children, to have Former Husband's time-sharing supervised, and for child support to be increased. The trial court granted Former Wife's petition as to child support but denied it as to the other grounds. Neither party challenges those rulings.

A copy of this plan is attached as an appendix to this opinion.

When first enacted in 2006, "relocation" was defined in section 61.13001 to mean a change in the principal residence of the child , with the term "principal residence of a child" meaning the home of the designated primary residential parent. § 61.13001(1)(g)-(h), Fla. Stat. (2006). The term "change of residence address" meant the relocation of a child more than fifty miles away from his or her principal residence at the time of the entry of the last order designating or modifying the designation of the primary residential parent or the custody of the minor child. § 61.13001(1)(a), Fla. Stat. (2006). Section 61.13001(7) also provided that there was no presumption for or against a request to relocate when the primary residential parent sought to move the child. In 2008, this subsection was amended to delete this reference to the "primary residential parent," and instead provided that a presumption does not arise in favor or against a request to relocate with the child when a parent seeks to move with the child. § 61.13001(7), Fla. Stat. (2008).
Section 61.13001 was last amended in 2009 to delete the reference to "change of residence address" in its entirety and to redefine "relocation" to mean at least a fifty-mile change in the location of the principal residence of a parent , from his or her principal residence at the time of the last order establishing or modifying time-sharing. § 61.13001(1), Fla. Stat. (2009).

To the extent that Former Husband is arguing that he did not have the burden of proving under section 61.13 that a substantial change in circumstances had occurred since the time of the final judgment to allow his relocation to Oregon with the minor children, we agree. As previously stated, under section 61.13001(7), there is no presumption for or against a parent relocating with a child, even where the move will materially affect the current time-sharing with the nonrelocating parent. All that is required is that the petitioning parent prove by the preponderance of the evidence at trial that his or her relocation is in the best interest of the child. § 61.13001(8). If that evidentiary burden is met, the burden shifts back to the nonrelocating parent to show, by a preponderance of the evidence, that the proposed relocation is not in the best interest of the child. Id.
We recognize that this may present an anomaly in that a parent who moves forty-nine miles away from his or her principal place of residence and thereafter seeks to modify time-sharing would still appear to have to show under section 61.13 a substantial, material, and unanticipated change in circumstances, in addition to showing that the modification in time-sharing is in the child's best interest, yet, under section 61.13001, the parent who petitions to relocate his or her principal residence fifty-one miles away or, as in this case, 3000 miles away, starts with no presumption for or against the requested relocation. To the extent that this dichotomy in the evidentiary burdens needs to be remedied, that task is best left to the Florida Legislature.

We reject, without further discussion, Former Husband's argument that the court had previously ordered him to finalize his purchase of a home in Oregon.

See § 61.13(2)(c) 1., Fla. Stat. (2017).