# Third District Court of Appeal

## State of Florida

Opinion filed January 3, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-178
Lower Tribunal No. 21-166-K
_____


**Tammy R. Ward,**
Appellant/Cross-Appellee,

vs.

**Joshua K. Waters,**
Appellee/Cross-Appellant.


An appeal from the Circuit Court for Monroe County, Bonnie J. Helms, Judge.

Garcia Law Firm, Trial Attorneys, and Manuel E. Garcia and Lawrence E. Harkenrider, for appellant/cross-appellee.

Cheri A. Shapiro, P.A., and Cheri A. Shapiro, for appellee/cross-appellant.


Before FERNANDEZ, SCALES, and MILLER, JJ.

MILLER, J.

Tammy Ward, the mother, challenges a court-ordered parenting plan granting Joshua K. Waters, the father, timesharing with the minor child in Hawaii. The father cross-appeals from an order fixing his child support obligation and the denial of rehearing on the same. The primary issue on appeal is whether the simultaneous denial of the father's petition for relocation and grant of extended long-distance timesharing produces an irreconcilable inconsistency and runs afoul of Hull v. Hull, 273 So. 3d 1135 (Fla. 5th DCA 2019), and section 61.13001, Florida Statutes (2022). We summarily affirm the cross-appeal, but, finding that the relief afforded to the father runs contrary to the only factual findings of record, we reverse the parenting plan and remand for further proceedings.

## BACKGROUND

This is a run-of-the-mill legal dispute over child custody. The mother and father never married but they were involved in a long-term relationship. They have one child, a fourteen-year-old daughter, in common.

During her formative years, the child lived in Hawaii with both parents, but, in 2017, the mother removed her from the state. Without objection from the father, the mother eventually settled in Key West, Florida with the child. The parties then agreed to annually rotate custody.

In 2021, the father, too, relocated to Key West. He then filed a petition to establish paternity in the circuit court. In his petition, he requested the court establish timesharing, parental responsibility, and child support. The mother filed an answer and counterpetition seeking identical remedies.

The parties stipulated to paternity, and the court ratified an agreed temporary order granting alternating weekly timesharing. Less than two months later, the father filed a petition to relocate with the child to Hawaii. The mother objected, and the trial court issued an order scheduling the remaining issues in the case for trial. The order contained deadlines and required the parties to "prepare and submit a proposed parenting plan."

The court convened the trial. After the close of the evidence, but before a ruling was rendered, the father unilaterally relocated back to Hawaii. The judge subsequently issued a detailed order denying the petition for relocation on the grounds it was not in the best interests of the child, while concurrently adopting the father's proposed long-distance parenting plan. Under the terms of the plan, the father was awarded extended timesharing with the child during school recesses in Hawaii, with additional timesharing upon demand in Key West. This appeal ensued.

## STANDARD OF REVIEW

3

We ordinarily review child custody decisions for an abuse of discretion, and we must affirm if the lower court's order is supported by competent, substantial evidence. Sordo v. Camblin, 130 So. 3d 743, 744 (Fla. 3d DCA 2014). To the extent such a decision implicates statutory interpretation and application, however, we conduct a de novo review. See Sanabria v. Sanabria, 271 So. 3d 1101, 1104 (Fla. 3d DCA 2019).

## ANALYSIS

The parties rely upon two sources of authority to support their respective positions. The first is the unyielding principle that the polestar consideration in any timesharing award is the best interests of the child. See Burgess v. Burgess, 347 So. 2d 1078, 1079 (Fla. 1st DCA 1977). The second is the parental relocation statute, codified in section 61.13001, Florida Statutes. We examine each, in turn.

It is axiomatic that trial courts are vested with substantial discretion in rendering decisions relating to the frequency, timing, duration, and conditions of timesharing. See Talarico v. Talarico, 305 So. 3d 601, 603 (Fla. 3d DCA 2020). This deference, of course, is not boundless. Any timesharing award must be supported by a finding as to the best interests of the child. As our sister court cogently explained in Davis v. Davis, 245 So. 3d 810 (Fla. 4th DCA 2018):

4

> Section 61.13(3), Florida Statutes . . . provides that the "[d]etermination of the best interests of the child shall be made by evaluating all of the factors affecting the welfare and interests of the particular minor child and the circumstances of that family." The statute includes a non-exhaustive list of twenty factors that may be considered. When making a determination of the best interest of the [child], the court need not independently address each of the listed factors, but the court must make a finding that the timesharing schedule is in the best interest of the [child].

Id. at 812 (internal citations omitted).

First enacted in 2006, section 61.13001, Florida Statutes, governs parental relocation. The statute has been amended on multiple occasions and currently defines relocation as a change in the location of the principal residence of a parent at least fifty miles away from his or her place of residence at the time of the last order establishing timesharing. § 61.13001(1)(e), Fla. Stat. The statute extends no presumption in favor of or against relocation. Instead, the parent seeking to change residence must initially prove by a preponderance of the evidence that relocation is in the best interests of the child. § 61.13001(8), Fla. Stat. Assuming this burden is satisfied, the non-relocating parent must then demonstrate by a preponderance of the evidence that the proposed relocation is not in the child's best interests. Id. The factors relevant to the trial court's analysis are enumerated in section 61.13001(7), Florida Statutes.

The statute appears to uniquely target those previously deemed "primary residential parent[s]." Raulerson v. Wright, 60 So. 3d 487, 489 (Fla. 1st DCA 2011). This is evidenced by the fact that the statute vests the trial court with discretion to "order contact with the nonrelocating parent," but contains no corresponding provision for contact with the relocating parent. § 61.13001(9)(a), Fla. Stat. The proper construction, however, has been the subject of some debate, and the Florida Supreme Court has yet to provide clear guidance. See Raulerson, 60 So. 3d at 489 ("Section 61.13001 delineates the requirements a primary residential parent must follow before relocating with a minor child . . . . [T]he primary residential parent must file a petition to relocate and receive permission from the circuit court to relocate."); Brooks v. Brooks, 164 So. 3d 162, 164 (Fla. 2d DCA 2015) ("[T]he definition [in section 61.13001] excludes any reference to the relocating parent being the primary residential parent . . . . [I]t is clear to us that the legislature has changed the focus from 'primary residential parent' to time-sharing parent, and the potential for a residential change of a primary residential parent is no longer the exclusive sine qua non for the current statutory requirement to file a relocation petition."). Our resolution of this appeal, however, turns on less nuanced considerations.

In Hull, the Fifth District Court of Appeal considered whether, under the relocation statute, the trial court retains the discretion to modify an existing parenting plan while concomitantly denying a petition for relocation. There, the father petitioned the trial court for relocation. Id. at 1137. As in the instant case, before receiving a ruling, the father unilaterally relocated and then sought timesharing at his new place of residence. Id. The trial court denied relocation, concluding it was not in the best interests of the children. Id. The court further denied long-distance timesharing, finding that the relocation statute did not provide an avenue for granting such relief. Id.

On appeal, the Fifth District examined the plain language of the relocation statute and determined it "makes no provision for the trial court to modify time-sharing when the parent's relocation is not approved because it [is deemed] not in the [child's] best interest." Id. at 1138. Since the father had not filed a separate motion for modification, the court further concluded that, "[w]hile the trial court pragmatically believed that a long[-]distance parenting plan between the parties would need to be adopted, it correctly recognized in its final judgment that, because it denied [the] petition to relocate, there was no mechanism under section 61.13001 to allow it to grant such relief." Id. at 1138–39.

The mother argues <u>Hull</u> is on all fours with this case. But a careful reading reveals a dispositive, distinguishing fact. Unlike the litigants in <u>Hull</u>, the parents in the instant case were not bound by a permanent parenting plan. Instead, they agreed to a timesharing arrangement that was only temporary in duration. This is evidenced by the plain language of the agreement and the fact that both parents sought permanent parenting plans in their respective petitions. Under these circumstances, the trial court was not similarly constrained by the confines of the relocation statute.

We must therefore examine the mother's alternative argument that denying relocation while concurrently granting long-distance timesharing produces an incongruous result. In denying relocation, the trial court meticulously rendered a myriad of detailed factual findings, all of which support the conclusion that the relevant statutory factors weighed heavily against relocation.[1] These findings remain undisturbed and are not the subject of the cross-appeal.

_____

[1] Included among the findings were the following: (1) "the [m]other has been the primary parental figure in the child's life;" (2) "[t]he child is at the age of puberty and the [m]other's close relationship with her daughter places her in the unique position to help guide her through this time;" (3) transportation costs for travel between Key West and Hawaii are overly burdensome; (4) differing time zones precludes the mother from meaningfully communicating with the child in Hawaii, an issue which is compounded by the father contacting law enforcement with unfounded reports of abuse; (5) the child is upset with the father's decision to relocate; (6) "contact with the familial

As previously noted, we recognize that a trial court is not required to independently address the applicable statutory timesharing factors set forth in section 61.13, Florida Statutes. But the court is nonetheless required to render the ultimate finding that the timesharing schedule comports with the best interests of the child. See Kelly v. Colston, 32 So. 3d 186, 187 (Fla. 1st DCA 2010).

In the instant case, the timesharing order is devoid of any such finding, and the factual determinations supporting the denial of relocation arguably negate the tacit conclusion that returning the child to Hawaii for any duration of time serves her best interests. Given these circumstances, the disconnect between the two concurrent rulings is impossible to reconcile without further explanation from the trial court.

Accordingly, we reverse that aspect of the parenting plan awarding long-distance timesharing in Hawaii, and we remand for the trial court to

_____

support system in Hawaii may be limited due to distance from the residence where [the child] would reside;" (7) the father has raised false allegations as to the mother's psychological health; (8) relocation would not serve the child's overall economic interests; (9) the father has not paid adequate child support; (10) as demonstrated by text message, the father displays "a level of disrespect and contempt for the [m]other's child-rearing;" (11) "the [f]ather's lack of co-parenting communication with the [m]other [has] created conflict between [m]other and child;" (12) the father refused to provide the mother with "an address where he would be taking the child when he arrived in Key West;" and (13) "the court [is] not convinced that the [f]ather believes the child requires therapy."

render a determination as to whether the proposed timesharing schedule or a different timesharing schedule is in the best interests of the child.

Affirmed in part; reversed in part; remanded.