DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LOUISE HADDAD,**
Appellant,

v.

**LYFT FLORIDA, INC.,** et al.,
Appellees.

No. 4D2025-0117

[May 13, 2026]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David Alan Haimes, Judge; L.T. Case No. 062023CA007025AXXXCE.

John Stewart Mills and Jonathan Anthony Martin of The Mills Firm, P.A., Jacksonville, for appellant.

Brigid F. Cech Samole, James Evans Gillenwater, and Bethany Jane Matilda Pandher of Greenberg Traurig, P.A., Miami, for appellees.

LOTT, J.

Louise Haddad claims she was assaulted by her Lyft driver. She sued Lyft for negligent and fraudulent misrepresentation, alleging that statements on its website led her to believe that the ride would be safe, thus leading to the personal injuries she suffered at the hands of the driver.

The merits of her claims are not before us. Instead, Lyft argued that a relatively new statutory provision, section 627.748(18), Florida Statutes (2022) ("Subsection 18"), provides it with *immunity* against her claims. The trial court agreed and dismissed the complaint.

Haddad appealed, arguing that Subsection 18's scope of immunity is not so broad as to cover her claims, which specifically allege that Lyft's own negligence caused her injuries.

With the benefit of oral argument, we affirm. The scope of immunity provided by Subsection 18's plain text is *very* broad. It appears to sweep

in practically any claim against Lyft (or a similar rideshare network operator) for injury suffered during a ride, regardless of how Lyft may have directly caused or contributed to the injury—so long as Lyft otherwise complies with the requirements of the rideshare statute (Section 627.748) and does not engage in criminal conduct.

Whether the legislators who voted on the text of the statute actually intended to confer such broad immunity is immaterial.[1] Whether it is wise to confer such broad immunity is not a question for this branch to answer.[2]

---

[1] "Judges interpret laws rather than reconstruct legislators' intentions." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 452–53 (1987) (Scalia, J., concurring); *see also Advisory Op. to the Governor re Implementation of Amend. 4, The Voting Restoration Amend.*, 288 So. 3d 1070, 1078 (Fla. 2020) ("[S]uch extraneous considerations [*i.e.,* legislative intent] can result in the judicial imposition of meaning that the text cannot bear, either through expansion or contraction of the meaning carried by the text."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 393 (2012) ("Each member voting for the bill has a slightly different reason for doing so. There is no single set of intentions shared by all. The state of the assembly's collecting psychology is a hopeless stew of intentions . . . [y]et the majority has undeniably agreed on the final language that passes into law. That is all they have agreed on—and that is the sole means by which the assembly has authority to make law.").

[2] *See, e.g.*, *DeSantis v. Fla. Educ. Ass'n*, 306 So. 3d 1202, 1218 (Fla. 1st DCA 2020) ("[T]he judiciary may not second guess the policy decisions of the political branches, no matter how appealing we may find contrary rationales.") (citation and quotations omitted); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403 (2024) ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences."); *State v. Burris*, 875 So. 2d 408, 414 n.2 (Fla. 2004) ("If the legislature did not intend the results mandated by the statute's plain language, then the appropriate remedy is for it to amend the statute.") (quoting *Overstreet v. State,* 629 So. 2d 125, 126 (Fla. 1993)).

Rather, our job is to discern what the text says.[3]  And this text says that the immunity provided by Subsection 18 is considerably broad.

## I. Background

### A. Factual Allegations

Haddad alleges that she took a Lyft ride on April 15, 2022.[4]  She claims that during her ride, the driver assaulted her, causing severe and permanent personal injuries.

Lyft Florida, Inc. is a transportation network company ("TNC") that uses a digital network to connect riders with drivers who provide prearranged transportation services.

Lyft advertises various rider-safety features, including "High safety standards" and "Proactive safety measures," and represents that its drivers must pass background checks, undergo annual re-screening, be continuously monitored for criminal convictions, and complete a safety program.  Haddad alleges she reviewed Lyft's website and relied on these representations in deciding to use Lyft's services.

Haddad filed suit in 2022.  Haddad's second amended complaint asserted three counts: negligence of the driver, and both negligent misrepresentation and fraudulent misrepresentation by Lyft.[5]  The claims against Lyft alleged the company made false or misleading safety

---

[3] *See, e.g.*, *Lab. Corp. of Am. v. Davis*, 339 So. 3d 318, 323 (Fla. 2022) ("In interpreting a statute, our task is to give effect to the words that the legislature has employed in the statutory text."); *Levy v. Levy*, 326 So. 3d 678, 681 (Fla. 2021) ("We strive to determine the text's objective meaning through the application of the text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued.") (cleaned up); *see also Homeowner's Choice Prop. & Cas. Ins. Co. v. Oakes*, 2026 WL 758382, at *8 n.2 (Fla. 4th DCA Mar. 18, 2026) ("[I]t is emphatically the province and duty of the judicial department to say what the law is.") (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)).

[4] "A motion to dismiss tests the legal sufficiency of the complaint and does not determine factual issues.  All allegations of the complaint must be taken as true and all reasonable inferences drawn therefrom must be construed in favor of the non-moving party." *Doe v. Finkelman*, 429 So. 3d 456, 469 (Fla. 4th DCA 2025) (quotations and citations omitted).

[5] The claims against the driver are not pertinent to this appeal.

representations, Haddad relied on those representations in agreeing to the ride, and her injuries resulted from that reliance.

Lyft moved to dismiss based on Subsection 18.

### B. <u>Statutory Framework</u>

Section 627.748 was enacted in 2017 as part of a comprehensive framework governing transportation network companies. In 2020, the legislature made several changes to the provision, including the addition of Subsection 18. Section 627.748(18), Florida Statutes (2022), provides:

> **Vicarious liability.—**
>
> (a) A TNC is not liable under general law by reason of owning, operating, or maintaining the digital network accessed by a TNC driver or rider, or by being the TNC affiliated with a TNC driver, for harm to persons or property which results or arises out of the use, operation, or possession of a motor vehicle operating as a TNC vehicle while the driver is logged on to the digital network if:
>
> 1. There is no negligence under this section or criminal wrongdoing under the federal or Florida criminal code on the part of the TNC;
>
> 2. The TNC has fulfilled all of its obligations under this section with respect to the TNC driver; and
>
> 3. The TNC is not the owner or bailee of the motor vehicle that caused harm to persons or property.
>
> (b) This subsection does not alter or reduce the coverage or policy limits of the insurance requirements under subsection (7) or the liability of any person other than the vicarious liability of a TNC as described in paragraph (a).

We note that this structure parallels the federal Graves Amendment, 49 U.S.C. § 30106 (2022), enacted in 2005, which preempts state laws imposing vicarious liability on vehicle owners engaged in the business of renting or leasing motor vehicles. *Cf. Seagrave v. State*, 802 So. 2d 281, 290 (Fla. 2001) ("Florida's well-settled rule of statutory construction [is] that the legislature is presumed to know the existing law when a statute is enacted . . . ."). The Graves Amendment provides that such owners are

4

not liable under state law solely by reason of ownership for harm arising from the use of the vehicle during the rental period, so long as the owner is not negligent or engaged in criminal wrongdoing.

### C. Procedural History

Haddad opposed Lyft's motion to dismiss, arguing that her claims were not barred because her claims were premised on Lyft's own alleged misrepresentations rather than vicarious liability for the driver's conduct.

The trial court granted the motion, concluding the complaint failed to allege facts bringing the claims within any exception to Subsection 18's default rule of nonliability. This appeal followed.

## II. Analysis

Haddad makes three arguments—two textual and one procedural—that her claims for negligent and fraudulent misrepresentation are not barred by Subsection 18. We address and reject each.[6]

### A. Subsection 18 immunity is broader than traditional vicarious liability.

Haddad argues that Subsection 18 is not applicable to her claims because Subsection 18 only bars traditional "vicarious" liability by TNCs.[7]

But that is simply not what Subsection 18 says.

To be sure, Subsection 18 is titled "vicarious liability." But as Lyft correctly counters, "[t]he title of a statute and the heading of a section cannot limit the plain meaning of the text." *Brooks v. Brooks*, 164 So. 3d 162, 164 (Fla. 2d DCA 2015) (citation omitted). Instead, any title "must be read in conjunction with and does not override the text of the statute." *Id.* (citing *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008)). Courts should attempt to harmonize a header with the

---

[6] The standard of review of an order granting a motion to dismiss is de novo. *Aquarius Condo. Ass'n, Inc. v. Goldberg*, 312 So. 3d 86, 87 (Fla. 4th DCA 2021).

[7] *Cf., e.g.*, *Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 467 (Fla. 2005) ("The concept of vicarious liability can be described as follows: A person whose liability is imputed based on the tortious acts of another is liable for the entire share of comparative responsibility assigned to the other.") (quotations omitted).

statutory text to the extent possible, but "[w]here statutory text and title are inconsistent, we go with the text." *Kanapuram v. Dir., U.S. Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1308 (11th Cir. 2025) (citing *Bhd. of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528–29 (1947)) (cleaned up). "[A] title or heading should never be allowed to override the plain words of a text." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 185 (2012).[8]

Subsection 18's plain text makes clear that the immunity conferred is much broader than traditional vicarious liability. Breaking it down, Subsection 18's operative provision provides that a TNC is:

> (1) not liable under general law;
>
> (2) by reason of owning, operating, or maintaining the digital network accessed by a TNC driver or rider, or by being the TNC affiliated with a TNC driver;
>
> (3) for harm to persons or property which results or arises out of the use, operation, or possession of a motor vehicle operating as a TNC vehicle while the driver is logged onto the digital network . . .

In other words, this immunity is broad, applying to all claims "under general law."

And this broad immunity extends to any claim based upon ("by reason of") Lyft "owning, operating, or maintaining" its network, or "being" affiliated with the driver. That language is far broader than traditional vicarious liability, and applies to cases in which Lyft's network affiliation with the driver is a but-for causal element of Lyft's alleged liability. *See, e.g., Burrage v. United States*, 571 U.S. 204, 213 (2014) (collecting authority wherein "the phrase, 'by reason of,' requires at least a showing of 'but for' causation") (citation omitted).

---

[8] Haddad argues that Subsection 18(b) affirms a traditional understanding of vicarious liability. Subsection 18(b) provides that "[t]his subsection does not alter or reduce the coverage or policy limits of the insurance requirements under subsection (7) or the liability of any person other than the vicarious liability of a TNC as described in paragraph (a)." But the mere reference to "the vicarious liability of a TNC as described in paragraph (a)" does no more work than Subsection 18's title.

And Subsection 18 immunity extends to any claim for harm which "results or arises out of the use, operation, or possession of a motor vehicle" while the driver is logged into the platform. These constructions ("results or arises out of" / "use, operation, or possession") likewise extend broadly. *See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 539 (Fla. 2005) (holding the phrase "arising out of" is "broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with'"); *Nat'l Indem. Co. v. Corbo*, 248 So. 2d 238, 240 (Fla. 3d DCA 1971) ("'[A]rising out of' means causally connected with, not proximately caused by.").

Here, Haddad brings negligent and fraudulent misrepresentation claims against Lyft for advertising misrepresentations that she claims caused her to take a Lyft ride and suffer harm when the driver assaulted her.

These claims (1) arise under "general law"; (2) causally relate Lyft's alleged negligence (i.e., false representations regarding safety) to the harm suffered (i.e., personal injuries from the driver's assault) via Lyft "owning, operating, or maintaining" the TNC network which the driver was logged into at the time; and (3) seek redress for injuries that arose out of the use, operation, or possession of the vehicle operating as a TNC vehicle while the driver was logged on to the network.

Accordingly, the claims fall within Subsection 18's scope. It does not matter that the complaint purports to plead negligence by Lyft rather than a traditional vicarious liability theory. The statute is written to encompass her claims.[9]

### B. The complaint does not allege "negligence under this section."

Haddad next argues that Subsection 18 immunity does not apply because she alleges "negligence under this section," and the statute only affords immunity "if . . . there is no negligence under this section." § 627.748(18)(a)1., Fla. Stat. (2022).

---

[9] And in any event, Lyft's alleged liability for the harm suffered at the hands of the driver is "indirect." *Cf. Vicarious*, Black's Law Dictionary (2026) ("Performed or suffered by one person as substitute for another; indirect; surrogate.").

Haddad argues that the phrase "negligence under this section," as used in Subsection 18(a)1., means "related to Lyft's operation of the digital TNC network," because Section 627.748 generally concerns digital TNC networks.

We disagree.

Rather, the phrase "negligence under this section" means "negligence under Section 627.748, Florida Statutes," which plainly means a negligent failure to meet the statute's requirements. Section 627.748 provides a comprehensive set of requirements with which rideshare companies must comply. Subsection 18 provides an immunity from certain liability so long as a TNC complies with those requirements (and refrains from criminal wrongdoing). Thus, "[a] TNC is not liable under general law . . . if . . . [t]here is no negligence under this section."

We note also that the phrase "under this section," does not appear in the Graves Amendment on which Subsection 18 was based, indicating a departure from the Graves Amendment's meaning. The Graves Amendment provides an exception to the general rule of non-liability "if . . . there is no negligence or criminal wrongdoing . . . ." 49 U.S.C. § 30106(a)(2) (2022). The Graves Amendment thus exempts from its operative non-liability provision *any* negligence, rather than only "negligence under this section."

Haddad argues that giving the phrase this meaning (as compared to her proposed meaning) would render Subsection 18(a)2.—which provides no liability if "[t]he TNC has fulfilled all of its obligations under this section with respect to the TNC driver"—superfluous.

However, each canon of statutory construction is only one permissible indicator of meaning. Sometimes different canons will cut different ways. The fact that Subsection 18 is drafted in such a way that makes it impossible to cleanly apply every canon is a challenge that courts must confront, rather than an invitation to abdicate our interpretive role.[10]

---

[10] *See, e.g.*, *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) ("Viewed properly as rules of thumb or guides to interpretation, rather than as inflexible rules, the traditional canons of statutory interpretation can aid the interpretive process from beginning to end.").

8

Though Haddad argues that our interpretation would render Subsection 18(a)2. mostly superfluous,[11] we note that her interpretation (negligence "related to Lyft's operation of the digital TNC network") would also render the words "under this section" superfluous relative to the single word "negligence" in the Graves Amendment. How else would a TNC network operator be negligent other than through its operation of a TNC network?

Our goal in this exercise "is to arrive at a fair reading of the text by determining the application of the text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." *Davis*, 339 So. 3d at 323–24 (cleaned up).

So, does "negligence under the section," as used in Subsection 18, mean "negligence with respect to the requirements of the section" or "negligence broadly related to the subject matter of this section"?

Weighing all the indicia of meaning and giving effect to all the words in context, the former is the better reading.

Thus, Haddad does not allege any "negligence under this section."

### C. **The trial court properly tested Subsection 18 immunity at the motion to dismiss stage.**

Haddad argues the trial court improperly applied the Subsection 18 affirmative defense at the motion to dismiss stage. As she argues, "[a]n affirmative defense is any matter that avoids the action and that, under applicable law, the plaintiff is not bound to prove initially but the defendant must affirmatively establish." *Langford v. McCormick*, 552 So. 2d 964, 967 (Fla. 1st DCA 1989) (citation omitted). And affirmative defenses "need not be negatived in the complaint." *Avila S. Condo. Ass'n, Inc. v. Kappa Corp.*, 347 So. 2d 599, 604 (Fla. 1977).

We address this argument last so the reader has a more fulsome understanding, given our previous discussion, of how Subsection 18 operates. With that understanding in mind, Subsection 18 immunity is

---

[11] *Cf.* Scalia & Garner, *Reading Law* at 176–77 ("Put to a choice, however, a court may well prefer ordinary meaning to an unusual meaning that will avoid surplusage. . . . Sometimes drafts *do* repeat themselves and *do* include words that add nothing of substance . . . .").

not a traditional affirmative defense, but a broader immunity cutting to the core of a cause of action against a TNC.

We see this from the emphatic opening language of the statute—"There is no liability . . . ." This simply does not sound like an affirmative defense that the defendant is required to prove. *Cf. Custer Med. Ctr. v. United Auto. Ins. Co.*, 62 So. 3d 1086, 1096 (Fla. 2010) ("An affirmative defense is an assertion of facts or law by the defendant that, if true, would avoid the action and the plaintiff is not bound to prove that the affirmative defense does not exist."); *Katz v. Riemer*, 305 So. 3d 663, 667 (Fla. 3d DCA 2020) ("[A]n affirmative defense is any matter that avoids the action and that the defendant must affirmatively establish.") (citation omitted).

And the legislature has not used the language, "there is no liability," in the context of affirmative defenses. Rather, it has used that language in the context of broader immunities.[12]

While we recognize some precedent suggests that some immunities are affirmative defenses,[13] we have not found any precedent recognizing an

---

[12] *See, e.g.*, § 408.910(11)(e), Fla. Stat. (2022) ("There is no liability on the part of, and no cause of action shall arise against, any member of the board or its employees or agents for any action taken . . . in the performance of their powers and duties under this section."); § 847.013(4)(d), Fla. Stat. (2022) ("[T]here is no liability on the part of the state or the relator state attorney for costs or damages sustained by reason of such restraining order . . . ."); § 556.106(1), Fla. Stat. (2022) ("There is no liability on the part of, and no cause of action of any nature shall arise against, the board members of the corporation . . . ."); § 631.918, Fla. Stat. (2022) ("There is no liability on the part of, and a cause of action may not arise against, the corporation [and related actors] for any action taken . . . in the performance of their powers and duties under this section[.]"); § 111.09(2)(c), (d), Fla. Stat. (2022) ("There is no liability on the part of, and no cause of action of any nature may arise against, the first responder peer for disclosing information under this paragraph."); § 651.034(3), Fla. Stat. (2022) ("There is no liability on the part of, and a cause of action may not arise against, the commission, department, or office . . . for any action they take . . . under this section."); § 627.351(4)(c), Fla. Stat. (2022) ("There is no liability on the part of, and no cause of action shall arise against, [enumerated entities] for any action taken . . . in the performance of their powers and duties under this subsection.").

[13] *See, e.g.*, *Swope v. Krischer*, 783 So. 2d 1164, 1166 n.1 (Fla. 4th DCA 2001) ("Although immunity is an affirmative defense . . . ."); *City of Delray Beach v. Sherman Williams Am. Legion, Post 188*, 358 So. 3d 440, 443 (Fla. 4th DCA 2023) ("[S]overeign immunity is generally an affirmative defense . . . ."); *but see City of Miami v. Robinson*, 364 So. 3d 1087, 1091 (Fla. 3d DCA 2023) ("Much like subject

10

immunity with this statutory language—"There is no liability"—as an affirmative defense. Based on Subsection 18's plain language, the rule is immunity, and the inquiry otherwise stops if the operative conditions for immunity are satisfied. The complaint needs to plead facts to overcome the immunity and background state of "no liability," unlike the case with a traditional affirmative defense.

Here, Subsection 18 is structured to establish a broad default rule of immunity, and Subsections (18)(a)1.–3. are exceptions to that general rule of immunity. Subsection 18 begins with the broad statement that "[a] TNC is not liable under general law," for certain types of claims (as discussed in Part II.A, above) "if" three conditions are met. Indeed, two of these conditions are expressed in negative terms.[14] The fact that these sub-provisions are phrased as a positive conditional statement ("if") followed by a negative condition ("not"), rather than a negative conditional statement ("unless"), does not convince us that these sub-provisions are not exceptions to the general rule of immunity which is clearly expressed at Subsection 18's outset.

This sort of construction is not unique. Section 631.918 follows a similar pattern, providing that "there is no liability" for certain things "unless such action is found to be a violation of antitrust laws, was in bad faith, or was undertaken with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." § 631.918, Fla. Stat. (2022). This language simply does not read like a traditional affirmative defense that survives a motion to dismiss even if the plaintiff does not plead an exception—a violation of antitrust laws, bad faith, etc. And no court has suggested that such language is an affirmative defense. There, as here, the complaint must allege facts supporting an "exception" to overcome the general rule that "there is no liability."

In sum, Subsection 18's plain language imposes a default rule of non-liability unless certain exceptions are satisfied. Other statutes using the same language do the same thing. If Subsection 18's operative conditions

matter jurisdiction, sovereign immunity isn't an affirmative defense, and it can be raised at any time.").

[14] *See* Subsection 18(a)1. ("if . . . [t]here is no negligence under this section or criminal wrongdoing . . . ."); Subsection 18(a)3. ("if . . . [t]he TNC is not the owner or bailee of the motor vehicle.").

are satisfied,[15] then in order to overcome the immunity in a suit against a TNC, plaintiffs must allege facts to satisfy an exception (in Subsection 18(a)1.–3.) to the general "no liability" rule. Haddad failed to do so here, even when given the explicit opportunity by the trial court.[16]

## III. Conclusion

Haddad's claims for negligent and fraudulent misrepresentation are barred by section 627.748(18), Florida Statutes (2022). The trial court correctly dismissed the claims with prejudice.

*Affirmed.*

KLINGENSMITH and SHAW, JJ., concur.

\*        \*        \*

**Not final until disposition of timely-filed motion for rehearing.**

---

[15] That is, the claim is brought "under general law by reason of owning, operating, or maintaining the digital network accessed by a TNC driver or rider, or by being the TNC affiliated with a TNC driver, for harm to persons or property which results or arises out of the use, operation, or possession of a motor vehicle operating as a TNC vehicle while the driver is logged on to the digital network." § 627.748(18), Fla. Stat. (2022).

[16] The trial court's order on an interim motion to dismiss correctly held that the complaint "fail[ed] to include factual allegations supporting one or more of the enumerated exceptions to the default rule of non-liability under Subsection 18(a)," and provided an opportunity to file an amended complaint.

12