[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12826

_____

MADHU SUDHAN KANAPURAM,
SWATHI PILLARISETTY,

Plaintiffs-Appellants,

*versus*

DIRECTOR, US CITIZENSHIP AND IMMIGRATION
SERVICES, SECRETARY, U.S. DEPARTMENT OF STATE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 2:22-cv-00168-RWS

_____

Before JORDAN and BRASHER, Circuit Judges, and GERAGHTY,[*] District Judge.

JORDAN, Circuit Judge:

The appellants, Madhu Sudhan Kanapuram and Swathi Pillarisetty, are citizens of India who are legally in the United States on temporary employment-based visas. They assert claims under the Administrative Procedure Act challenging the delay by U.S. Citizen and Immigration Services in adjudicating their Form I-485 applications for adjustment of status.

**I**

Under the Immigration and Nationality Act, USCIS can adjust the status of a noncitizen already living in the country to that of a lawful permanent resident. As relevant here, a noncitizen seeking adjustment of status "through employer sponsorship must receive an employment-based preference use," or EB, visa. *See Geda v. Director, USCIS*, 126 F.4th 835, 839 (3d Cir. 2025). This generally entails a three-step process: (1) the employer files an application for a labor certification with the Department of Labor; (2) if the application is approved, the employer files a Form I-140 visa petition with USCIS on the noncitizen's behalf; and (3) if the Form I-140 petition is approved, the noncitizen files a Form I-485 application for adjustment of status. *See Kurapati v. U.S. Bureau of Citizenship*

---

[*] Honorable Sarah E. Geraghty, United States District Judge for the Northern District of Georgia, sitting by designation.

*&-Immigr. Servs.*, 775 F.3d 1255, 1258 (11th Cir. 2014) (describing the three-step process).

The INA limits the number of visas available each year in various categories. *See* 8 U.S.C. §§ 1151, 1152. These limits "apply to both foreign nationals seeking to enter the United States and [noncitizens] currently in the United States who apply for adjustment of status." *Cheejati v. Blinken*, 106 F.4th 388, 391 (5th Cir. 2024). To determine in what order to allocate the limited number of available visas, applicants have a "priority date" that represents their place in the queue of those awaiting visas. *See* 8 C.F.R. § 245.1(g). For EB-2 visas, the type of visas sought by the appellants, the priority date is the date the petition for a labor certification was accepted for processing. *See* 8 C.F.R. § 204.5(d).

The Department of State "may make reasonable estimates of the anticipated numbers of visas to be issued" within each category for each fiscal year and "rely upon such estimates in authorizing the issuance of visas." 8 U.S.C. § 1153(g). It publishes a monthly Visa Bulletin that lists the cut-off date, called the "Final Action Date," for visa availability by visa category and country. *See* 8 C.F.R. § 245.1(g)(1). *See also* U.S. Dep't of State, Bureau of Consular Affairs, The Visa Bulletin, *available at* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin.html. A visa is considered available if the applicant's priority date (i.e., the spot in the visa queue) is earlier than the Final Action Date (i.e., the cut-off date for visa numbers) shown in the Visa Bulletin. *See* 8 C.F.R. § 245.1(g)(1).

The Final Action Date fluctuates. "[W]hen the annual limit for a category or country has been used up or is expected to be used up soon," the Department of State applies a retrogression policy in which "the cut-off date will move backwards to an earlier date" to keep visa allocations within statutory limits. *See* USCIS Policy Manual, at Vol. 7, Pt. A, Ch. 6(C)(5) (2025). And "[w]hen a Final Action Date retrogresses, it is possible that an individual applicant could have been eligible to apply for adjustment of status on one day, but ineligible the next." *Cheejati*, 106 F.4th at 392.

## II

The appellants are Indian citizens seeking EB-2 visas. Mr. Kanapuram has lived in the United States for more than 17 years. His employer filed a permanent labor certification for him on November 9, 2013, making that the "priority date."[1]

In December of 2020, the appellants filed Form I-485 applications for EB-2 immigrant visas. They contend that when they filed their applications, they were within the priority date cutoff. But the Final Action Date was pushed back from December of 2014 to April of 2012 while their applications were pending, placing their applications outside the priority cutoff date.

After waiting 19 months for their visas, the appellants filed suit, alleging that USCIS and the Department of State violated the Administrative Procedure Act by unlawfully withholding and

---

[1] The amended complaint does not contain allegations about the filing of a labor certification for Ms. Pillarisetty.

unreasonably delaying agency action in refusing to adjudicate their applications and issue them immigrant visa numbers.  They asked the district court to (1) declare the retrogression policy unlawful and unreasonable; (2) enjoin USCIS and the Department of State from applying it; and (3) compel USCIS to adjudicate their Form I-485 applications within 30 days.

The district court granted the government's motion to dismiss, concluding that 8 U.S.C. § 1252(a)(2)(B) barred review of a claim asserting delay in the adjudication of pending Form I-485 applications.  The appellants now seek review of the order of dismissal.

### III

The dismissal of a complaint for lack of subject-matter jurisdiction is subject to plenary review.  *See Del Valle v. Sec'y of State*, 16 F.4th 832, 837 (11th Cir. 2021).  "We always have jurisdiction to determine our own jurisdiction."  *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1153 (11th Cir. 2019) (citation and quotation marks omitted).

Administrative action is presumptively subject to review by the courts.  *See Kucana v. Holder*, 558 U.S. 233, 251 (2010).  But this presumption can be overcome by "clear and convincing evidence" of congressional intent to preclude judicial review.  *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993) (citation omitted).

### A

A person who has suffered a legal wrong because of agency action may generally seek judicial review under the APA. *See* 5 U.S.C. § 702. The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13). "Although the APA independently does not confer subject-matter jurisdiction, 28 U.S.C. § 1331 confers jurisdiction on federal judges to review agency action under federal-question jurisdiction." *Perez v. U.S. Bureau of Citizenship Immigr. Servs.*, 774 F.3d 960, 965 (11th Cir. 2014). But APA review does not apply when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

The question here is whether judicial review is precluded by 8 U.S.C. § 1252(a)(2)(B), which provides as follows:

> Notwithstanding any other provision of law . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> (i) any judgment regarding the granting of relief under section . . . 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the

23-12826              Opinion of the Court                    7

> Secretary of Homeland Security, other than the
> granting of relief under section 1158(a) of this title.

Despite the jurisdiction-stripping language in § 1252(a)(2)(B)(ii), federal courts retain jurisdiction to review "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D).

Our sister circuits have held, in nearly identical cases, that § 1252(a)(2)(B)(ii) precludes jurisdiction over challenges to USCIS delays in adjudicating Form I-485 adjustment of status applications. *See Cheejati*, 106 F.4th at 394–96; *Geda*, 126 F.4th at 845–47; *Thigulla v. Jaddou*, 94 F.4th 770, 777–78 (8th Cir. 2024). We agree with them.[2]

**B**

Under the INA,

> [t]he status of an alien who was inspected and admitted or paroled into the United States . . . *may* be

---

[2] The appellants assert that there is a circuit split, and cite to *Babaria v. Blinken*, 87 F.4th 963 (9th Cir. 2023). In that case, the Ninth Circuit held that the plaintiffs' APA claim challenging USCIS' delay was unlikely to succeed and therefore affirmed the district court's denial of the plaintiffs' motion for a preliminary injunction. *See id* at 976–80. The Ninth Circuit, however, did not consider or reject the argument that 8 U.S.C. § 1252(a)(2)(B)(ii) strips federal courts of jurisdiction to review such challenges. *See id.* The First Circuit also issued a similar merits-based decision without addressing jurisdiction. *See Gupta v. Jaddou*, 118 F.4th 475, 482–87 (1st Cir. 2024) (holding that plaintiffs bringing a similar challenge had failed to state a claim under the APA and declining to address any jurisdictional bar). Because the Ninth and First Circuit

> adjusted by the Attorney General, *in his discretion and under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent residence if (l) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphases added). In other words, § 1255(a) gives the Department of Homeland Security and USCIS broad discretion to determine and implement the adjudicative process for Form I-485 applications, within the bounds set by statute.[3]

Taken together, §§ 1252(a)(2)(B)(ii) and 1255(a) overcome the presumption in favor of judicial review. As the Fifth Circuit has explained, § 1255(a)'s grant of discretion includes not only the ultimate decision to approve or deny a visa, but also "actions taken in the course of the decision-making process—including the pace at

---

cases did not address the issue of subject-matter jurisdiction, they do not create a circuit split. *Cf. Gilreath v. State Bd. of Pardons & Paroles*, 273 F.3d 932, 933 n.★ (11th Cir. 2001) ("Because jurisdiction was not addressed, the *Smith* decision is not binding precedent on the jurisdictional question presented in this case.").

[3] Although § 1255(a) refers to the Attorney General as the official with authority to grant immigrant visa petitions and adjust status, "Congress has transferred the adjudications of the former Immigration and Naturalization Service (INS) to the Secretary of Homeland Security and his delegate at the U.S. Citizenship and Immigration Services." *Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1264 n.2 (11th Cir. 2011) (citation and quotation marks omitted). References to the Attorney General in § 1255(a) are deemed to be references to the DHS and USCIS. *See* 6 U.S.C. § 557.

which that process is undertaken[.]" *Cheejati*, 106 F.4th at 394 (emphasis omitted). *See also Geda*, 126 F.4th at 843 (concluding that § 1255(a) "provides the Secretary discretion over not only the final decision but the entire process for reaching that decision"). We conclude that the challenged USCIS action here—delaying the grant of Form I-485 applications when the Department of State indicates that annual visa limits have been reached—falls within § 1255(a)'s statutory grant of discretion. And challenges to that delay are barred by § 1252(a)(2)(B)(ii). *See Cheejati*, 106 F.4th at 394. In the words of the Third Circuit, the decision on "whether *and* how to adjust . . . status . . . is explicitly committed to the Secretary's discretion," which has been "delegated to USCIS." *Geda*, 126 F.4th at 843.

The appellants contend that the retrogression policy does not constitute an exercise of discretion because it is based solely on the belief that the agency lacked lawful authority to act otherwise. *See* Appellants' Supplemental Letter Br. at 2 (citing *DHS v. Regents Univ. of Cal.*, 591 U.S. 1, 16–19 (2020)). But § 1255(a) gives the DHS and USCIS discretion to prescribe regulations regarding adjustment of status. *See Thigulla*, 94 F.4th at 775.

In addition to promulgating a regulation reflecting § 1255(a)'s requirement that a visa be available upon filing, *see* 8 C.F.R. § 245.1(g), USCIS also instituted the challenged policy requiring a visa to be available at both filing *and approval*. *See* USCIS Policy Manual, at Vol. 7, Pt. A, Ch. 6(C)(4). The creation of this policy, and the decision to delay adjudicating the appellants'

applications in compliance with this policy, fall within the scope of § 1255(a). *See Thigulla*, 94 F.4th at 775–77; *Cheejati*, 106 F.4th at 394–95. The source of this discretion is a statute, not a regulation or a policy. *See Kucana*, 558 U.S. at 239–40. That USCIS instituted a policy to promote uniformity does not remove processing decisions from its statutorily-granted discretion. *See Geda*, 126 F.4th at 844 ("[W]e lack jurisdiction to review both the decision to put the [appellants'] applications on hold *and* the inextricably intertwined process prescribed by the Secretary for reaching that decision.") (emphasis in original and quotation marks omitted).

We do not hold that § 1255(a)'s commitment of status adjustments to agency discretion necessarily constitutes a blanket bar on all legal challenges pursuant to § 1252(a)(2)(B)(ii). For example, were USCIS to violate its own binding regulations in processing visa applications, those actions might be reviewable. We have previously held that "[e]ven when a decision is committed to agency discretion, a court may consider allegations that an agency failed to follow its own binding regulations" because an agency lacks the discretion to decline to follow such regulations. *See Kurapati*, 775 F.3d at 1262 (addressing the discretion granted by 8 U.S.C. § 1154's language that "[t]he Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved"). *Cf. Bourdon v. DHS*, 940 F.3d 537, 548 (11th Cir. 2019) (declining to extend *Kurapati* to a different immigration statute placing a determination within the "sole and unreviewable discretion" of an agency). We express no view on such a scenario.

## C

The appellants argue that § 1252(a)(2)(B)(ii) does not apply to USCIS' adjustment of status decisions because § 1252 is titled "Judicial review of orders of removal" and is therefore limited to removal proceedings. But the initial paragraph in § 1252(a)(2)(B) states that its jurisdictional bars apply "regardless of whether the judgment, decision, or action is made in removal proceedings[.]" Where statutory text and title are inconsistent, we go with the text. *See Brotherhood of R. R. Trainmen v. Baltimore & O. R. Co.,* 331 U.S. 519, 528–29 (1947) ("[T]he heading of a section cannot limit the plain meaning of the text."). Indeed, in response to a disagreement in the federal courts as to whether § 1252(a)(2)(B) applied outside the context of removal proceedings, Congress amended the statute in 2005, adding the language "regardless of whether the judgment, decision, or action is made in removal proceedings." *See Geda,* 126 F.4th at 845 (citing Pub. L. No. 109–13, 119 Stat. 302, 305). And the Supreme Court has told us that § 1252(a)(2)(B) is not limited to removal proceedings. *See Patel v. Garland,* 596 U.S. 328, 338 (2022).

In addition, the appellants rely on § 1252(a)(2)(D), which allows courts to review "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals[.]" But this provision applies only to petitions for review—a mechanism for appealing an agency order directly to a circuit

court—and not to suits filed in district court to compel agency action. *See Thigulla*, 94 F.4th at 777.[4]

**IV**

We hold that 8 U.S.C. § 1252(a)(2)(B)(ii) deprived the district court of jurisdiction over the appellants' APA claims because 8 U.S.C. § 1255(a) grants the DHS and USCIS discretion as to the process and resolution of adjustment of status applications. We therefore affirm the order of dismissal.

**AFFIRMED.**

---

[4] Because we conclude that § 1252(a)(2)(B)(ii) applies and deprives federal courts of jurisdiction to review the appellants' claims, we need not address § 1252(a)(2)(B)(i).